UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
YVETTE PUMA-GRIPPE,

                Plaintiff,

   - against -

CITY OF NEW YORK, et al.,

                Defendants.
------------------------------------------------------x

MEMORANDUM AND ORDER

12 Civ. 893 (ILG) (LB)

GLASSER, Senior United States District Judge:

Plaintiff Yvette Puma-Grippe brings this action against the City of New York ("City"), New York City Administration for Children's Services ("ACS"), and current and former ACS employees ("individual defendants," collectively "defendants"), alleging that her minor daughter, V.G., was wrongfully removed from her custody in violation of her federal and state constitutional rights.

Currently before the Court is plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and defendants' cross-motion for summary judgment. For the reasons set forth below, plaintiff's motion is hereby DENIED, and defendants' motion is hereby GRANTED.

## BACKGROUND

### I. Facts

Unless otherwise noted, the following facts are undisputed. Plaintiff met Anthony Grippe in 1999 and they married in 2002. Rauchberg Decl. ¶ 7, Ex. F at ACS 243 (Dkt. No. 57-6). On March 9, 2001, they had a daughter, V.G. Id. ¶ 6, Ex. E at SI FC 281. Plaintiff and Mr. Grippe separated in August 2007, and plaintiff maintained custody of V.G. Id. ¶¶ 10, 26, Exs. I (Nov. 8, 2007 Hr'g), Y (Puma-Grippe Dep.) at 59-

1

60. This led to years of contentious family court proceedings that included claims of neglect, dueling family offense petitions, orders of protection, and disputes over visitation rights. Id. ¶¶ 6, 10, Exs. E, I. During the course of these proceedings, attorney Richard Katz was appointed as V.G.'s law guardian to represent her interests. Id. ¶ 10, Ex. I (Nov. 15, 2007 Hr'g) at 4.

### A. ACS Investigation

On March 5, 2008, ACS received a report about plaintiff alleging that:

> Mother is paranoid and is hallucinating and is failing to provide a safe environment for [V.G.]. Mother is abusing drugs and is getting high on oxicodine [sic] while she is the sole caretaker of the child. On Monday 3/3/08 mother was observed high and the child was with her. Mother feel [sic] that the landlord is poisoning her and that he is taping her. Due to mother's mental state there is great concern for child's safety.

Id. ¶ 2, Ex. A at ACS 4-6. Plaintiff was just shy of her seventh birthday at the time of the report. Id. ¶ 7, Ex. F at ACS 277. In response to the report, Majidah Shabazz, a caseworker in the ACS Staten Island office, was assigned to investigate. Pl.'s Ex. A (Shabazz Dep.) at 18-19 (Dkt. No. 63).

During the investigation, V.G. told Shabazz that she has a regular relationship with her mother, "has never observed anything bizarre," and "is happy and likes school." Rauchberg Decl. ¶ 3, Ex. B at ACS 13, 15. V.G.'s teachers agreed that V.G. "seems to be very happy" and "seemed to be very taken care of." Id. at ACS 12; Pl.'s Ex. A at 23. However, V.G. also stated that plaintiff "has a secret and told her not to tell anyone what it is." Rauchberg Decl. ¶ 3, Ex. B at ACS 13. Mr. Grippe told Shabazz that although he never observed plaintiff mistreat V.G. or act bizarrely, "she is known to make false allegations," including accusing him of "poisoning her and videotaping her." Id. at ACS 15. Similarly, a social worker who met with plaintiff on March 3, 2008 to discuss her

possible eviction stated that plaintiff is "very strange and unusual" because she is worried that "people are poisoning her, videotaping her, and chasing her." Id. at ACS 11.¹  The social worker thought that plaintiff was not sufficiently mentally stable to care for V.G.  Id.  Finally, V.G. stated that she was almost struck by a bus while with plaintiff a few days earlier.  Rauchberg Decl. ¶ 11, Ex. J at 20.  According to Dominique Gagliardo, plaintiff's adult daughter from a previous relationship, on March 9, 2008, plaintiff took V.G. out of the car while stopped at a red light and walked into oncoming traffic because she believed that someone was chasing her.  Id. ¶¶ 3, 11, Ex. B at ACS 30, Ex. J at 19-20.²

Based on the allegations in the report and Shabazz's investigation, ACS determined that V.G.'s safety was in danger due to plaintiff's paranoia, delusions, and hallucinations, and Shabazz's supervisor directed her to remove V.G. from plaintiff's custody.  Id. ¶ 5, Ex. D at ACS 45; Pl.'s Ex. A at 25.  On March 11, 2008, Shabazz and ACS caseworker Stephanie Nieves removed V.G. from school and temporarily placed her with her teacher.  Rauchberg Decl. ¶ 3, Ex. B at ACS 29.  Plaintiff was then informed that V.G. had been removed from her custody.  Id.

### B. Family Court Proceedings

The next day, ACS filed a neglect petition in Staten Island Family Court in accordance with Article 10 of the New York Family Court Act, stating that V.G.'s

---

¹ ACS later learned that plaintiff's landlord evicted her on March 20, 2008 due to these allegations.  Rauchberg Decl. ¶ 5, Ex. D at ACS 45.

² Plaintiff denies driving V.G. that day, but Shabazz was unable to interview her despite several attempts.  Id. ¶¶ 3, 11, Ex. B at ACS 11-16, Ex. J at 35-36, 43-44.  Nonetheless, plaintiff stated that on a separate occasion a car followed her while driving V.G. home from school, tailgated her, and forced her to swerve into oncoming traffic.  Id. ¶ 26, Ex. Y at 120-24.

emergency removal was required because plaintiff "suffers from mental illness which renders her incapable of providing minimally adequate care for the child." Id. ¶ 7, Ex. F at ACS 277-85. The case was brought before Judge McElrath, who held an evidentiary hearing at plaintiff's request. Id. ¶ 11, Ex. J at 3-6. After hearing testimony from both Shabazz and plaintiff, Judge McElrath noted the similarity between plaintiff's accusations against her landlord and Mr. Grippe, determined that plaintiff exhibited "a certain amount of paranoia," and concluded that "leaving the child in the home or remaining in the home would be contrary to the best interest and welfare of the child and present imminent risk to the child." Id. at 58-59. Judge McElrath then remanded V.G. to ACS with weekly visitation for plaintiff and Mr. Grippe, ordered psychiatric evaluation of plaintiff, and directed ACS to investigate Mr. Grippe "as a possible resource for the child." Id. at 59-61.

On March 27, 2008, the parties again appeared before Judge McElrath who appointed Katz as V.G.'s law guardian since he had previously served as such. Id. ¶ 12, Ex. K at 3. ACS then recommended, based on its investigation, placing V.G. with Mr. Grippe. Id. at 4. Plaintiff objected, so Judge McElrath stayed his order releasing V.G. to Mr. Grippe to "allow respondent mother the opportunity to seek appellate relief." Id. at 6. The Appellate Division denied plaintiff's application for a stay, and, on April 2, 2008, V.G. was placed with Mr. Grippe. Id. ¶¶ 4, 13, Ex. C at ACS 84, Ex. L at 4. On April 18, 2008, plaintiff was evaluated by both a psychiatrist and a psychologist who concluded that plaintiff's "inability to handle her affairs, and her poor reality testing suggest she may have some 'psychotic thinking,' possibly drug related." Id. ¶ 7, Ex. F at ACS 248. Nonetheless, at the next court appearance on April 24, 2008, Judge McElrath permitted plaintiff to have weekly, supervised visitation with V.G. Id. ¶ 13, Ex. L at 6-8.

On June 9, 2008, plaintiff requested administrative review of ACS's findings against her; however, the New York State Office of Children and Family Services ("OCFS") decided to confirm the findings. Id. ¶ 5, Ex. D at ACS 266. In late June or early July 2008, Shabazz left ACS and the case was assigned to Tchara Harris under Steven Taub's supervision. Pl.'s Ex. A at 7; Rauchberg Decl. ¶ 4, Ex. C at 92, 95, 106.

On August 11, 2008, plaintiff accused Mr. Grippe of leaving V.G. with her half-sister Gagliardo, who allegedly used drugs in front of the child and had a criminal record. Rauchberg Decl. ¶ 14, Ex. M at 15. Judge McElrath directed ACS to investigate the allegations, and Harris and Taub concluded that although Gagliardo occasionally cared for V.G., there was no evidence of drug use or a criminal history. Id. ¶¶ 7, 14, Ex. F at ACS 274-76, Ex. M at 16. Plaintiff later provided evidence that Gagliardo twice pleaded guilty to disorderly conduct, which is a violation. Pl.'s Ex. G.

From September 2008 through January 2010, the case was repeatedly adjourned. Rauchberg Decl. ¶¶ 15-21, Exs. N-T. During this time, plaintiff moved for unsupervised visitation, while V.G. indicated that "visits with [plaintiff] are not going very well and she wanted it to end." Id. ¶¶ 7, 19, Ex. F at ACS 275, Ex. R at 4-5. In February 2010, Judge Wolff replaced Judge McElrath on the matter, and she considered plaintiff's motion for unsupervised release. Id. ¶¶ 22-23, Exs. U-V. Although ACS did not oppose plaintiff's request, Mr. Grippe "vehemently" opposed the application and Katz submitted an affidavit stating that V.G. "is adamantly opposed to unsupervised visits and had expressed fear of her mother." Id. ¶¶ 8, 22-23, Ex. G at SI FC 46, Ex. U at 3-4, Ex. V at 15-25. Based largely on Katz's affidavit "expressing the position of the child," Judge Wolff denied plaintiff's motion for unsupervised visitation on March 15, 2010. Id. ¶ 8, Ex. G at SI FC 45-47.

5

On March 17, 2010, ACS made an application to withdraw its neglect petition. Id. ¶ 24, Ex. W at 4. ACS stated that it believed plaintiff "was exhibiting bizarre behavior" that affected V.G. at the time, but that since plaintiff cooperated with ACS supervision, "she's mentally stable and capable of caring for the child." Id. Over Katz's objection, Judge Wolff dismissed the petition based on ACS's withdrawal. Id. ¶¶ 8, 24, Ex. G at SI FC 14, Ex. W at 6-7, 10. However, V.G. remained with Mr. Grippe pending a custody determination. Id. ¶ 24, Ex. W at 18-22.

On August 25, 2010, Gagliardo informed the court that Mr. Grippe had fallen gravely ill and petitioned for custody of V.G., emphasizing that V.G.'s grandmother would "help out." Id. ¶ 25, Ex. X (Aug. 25, 2010 Hr'g) at 5-6. Katz supported granting custody to Gagliardo, arguing that Gagliardo and V.G.'s grandmother would provide "a situation where she can start school and be stable." Id. at 15-16. Over plaintiff's objections, Referee Oakes awarded Gagliardo temporary custody of V.G. but permitted plaintiff to have supervised visitation. Id. ¶¶ 9, 25, Ex. H at SI FC 89, Ex. X (Aug. 25, 2010 Hr'g) at 18-19, Ex. X (Sept. 21, 2011 Hr'g) at 5.[3] Mr. Grippe passed away on September 13, 2010. Id. ¶ 25, Ex. X (Sept. 15, 2010 Hr'g) at 4.

On March 30, 2011, plaintiff's visitation rights were suspended "because of the child's extreme discomfort," and the suspension was continued on September 21, 2011 for plaintiff's "non-participation in the forensic evaluation and her continued failure to appear" in court. Id. ¶ 25, Ex. X (Sept. 21, 2011 Hr'g) at 5-7.[4] As of October 18, 2012,

---

[3] Referee Oakes appears to have taken over the case from Judge Wolff sometime between March 2010 and August 2010.

[4] From September 2011 through May 2012, Gagliardo was briefly awarded custody of V.G. based on plaintiff's default, which was later vacated. Id. ¶ 9, Ex. H at SI FC 147-49, 152-53, 158, 241-43, 259, 271-73.

6

the most recent court appearance for which there is a record, V.G. remains in Gagliardo's custody and is "absolutely adamant . . . that she does not wish contact with [plaintiff]."  Id. ¶ 25, Ex. X (Oct. 18, 2012 Hr'g) at 5-6.

## II. Procedural History

On August 3, 2010, plaintiff served a notice of claim on the Comptroller of the City of New York alleging that V.G. was wrongfully removed from plaintiff's custody, which was rejected as untimely.  Pl.'s Ex. Q.  Plaintiff also requested a fair hearing by OCFS to prevent disclosure of the ACS case.  Pl.'s Ex. S.  The hearing was held on September 15, 2011, and Administrative Law Judge ("ALJ") Wasko concluded that because ACS submitted no evidence at the hearing, it "did not establish by a fair preponderance of the evidence that [plaintiff] committed the acts of [child] maltreatment alleged," so "the existence of the report . . . may not be disclosed."  Id.

Plaintiff filed this action on February 23, 2012 on behalf of both herself and V.G. seeking declaratory, monetary, and injunctive relief.  Dkt. No. 1.  On December 3, 2012, plaintiff stipulated to discontinue her claims on behalf of V.G. and for injunctive relief.  Dkt. No. 37.  Plaintiff moved for summary judgment on December 26, 2012, and defendants opposed plaintiff's motion and cross-moved for summary judgment on April 27, 2013.  Pl.'s Mem. (Dkt. No. 44); Defs.' Mem. (Dkt. No. 50).  On June 7, 2013, plaintiff filed her opposition to defendants' motion and reply brief in support of her motion.  Pl.'s Opp'n (Dkt. No. 60); Pl.'s Reply (Dkt. No. 61).  Defendants filed their reply on June 28, 2013.  Defs.' Reply (Dkt. No. 66).

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quotation omitted).

The moving party bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A court deciding a motion for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted). When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim. Celotex, 477 U.S. at 322-23. To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), and cannot "rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quotation omitted).

**B. Plaintiff's Claims**

Plaintiff alleges that defendants violated her Fourth and Fourteenth Amendment rights by removing V.G. from her custody and bringing a neglect petition in family court, and cites a laundry list of provisions of the Civil Rights Act: 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Second Am. Compl. ¶¶ 1-3 (Dkt. No. 19). Plaintiff appears to claim that

defendants violated her substantive due process right to raise her daughter under the Fourteenth Amendment; procedural due process rights under the Fourteenth Amendment by maliciously bringing a neglect proceeding without probable cause; equal protection rights under the Fourteenth Amendment by removing her daughter from her custody; Fourth Amendment rights against malicious prosecution by initiating a neglect proceeding without probable cause; Fourth Amendment rights by seizing her daughter without probable cause; and concomitant state constitutional rights. Id. ¶¶ 68-129.

"Section 1983 governs civil rights actions against a person acting under color of state law who 'subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.'" Bazile v. N.Y.C. Dep't of Educ., No. 12 Civ. 6267, 2013 WL 3495936, at *3 (E.D.N.Y. July 11, 2013) (quoting 42 U.S.C. § 1983). "'The statue itself is not a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred,' here the [Fourth] and Fourteenth Amendments." Pleasure Island, Inc. v. City of New York, No. 12 Civ. 4699, 2013 WL 2311837, at *4 (E.D.N.Y. May 24, 2013) (quoting Reyes, 2012 WL 37544, at *3). "Section 1985 prohibits conspiracy to interfere with civil rights, and § 1986 creates a cause of action for neglecting to prevent an actionable conspiracy under § 1985." Id. (quotation omitted).

### i. Fourteenth Amendment Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." "Parents 'have a constitutionally protected liberty interest in the care, custody, and management of their children,' and family members have a fundamental right under

9

the Fourteenth Amendment to stay together." Green ex rel. T.C. v. Mattingly, No. 07-CV-1790, 2010 WL 3824119, at *7 (E.D.N.Y. Sept. 23, 2010) (quoting Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999)) (internal quotation omitted). However, "this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999) (Sotomayor, J.) (quotation omitted). "The difficulty of balancing [these] weighty interests . . . has prompted courts to impose few concrete restrictions on case workers[] in exercising their discretion." Id.

"The liberty interests of parent and child in continued care and companionship ha[ve] both procedural as well as substantive elements." Graham v. City of New York, 896 F. Supp. 2d 337, 349 (E.D.N.Y. 2012) (quotation omitted). "Procedural due process generally requires a hearing prior to depriving a parent of custody or a prompt post-deprivation hearing if the child is removed under emergency circumstances." Green, 2010 WL 3824119, at *8 (quotation omitted). "To demonstrate a violation of substantive due process rights, plaintiff[] must show that the removal of [the child] 'was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" Id. at *10 (quoting Tenenbaum, 193 F.3d at 600). However, given the "need for unusual deference" in ACS investigations, "[a]n investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings." Wilkinson, 182 F.3d at 104-05 (citing Van Emrick v. Chemung Cnty. Dep't of Soc. Servs., 911 F.2d 863, 866 (2d Cir. 1990)).

    **ii. Fourth Amendment Claims**

The Fourth Amendment protects against "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." "Removal of a child . . . may be construed as a 'seizure' under the Fourth Amendment," but Fourth Amendment rights can only be asserted by a parent on behalf a child, "and not vicariously on behalf of the parent herself." Green, 2010 WL 3824119, at *11 (citing Tenenbaum, 193 F.3d at 602). Similarly, "a claim for malicious prosecution under § 1983 may only arise where there has been a violation of the plaintiff's Fourth Amendment rights." Graham, 869 F. Supp. 2d at 356 (citing Washington v. Cnty. of Rockland, 373 F.3d 310, 315-16 (2d Cir. 2004)).

### II. Plaintiff's Motion

Plaintiff moves for summary judgment on all claims, arguing that ALJ Wasko's decision that ACS "did not establish by a fair preponderance of the evidence that [plaintiff] committed the acts of maltreatment alleged" requires finding defendants liable under the doctrine of collateral estoppel. Pl.'s Mem. at 1-2, 9-10.

"Collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Reyes v. City of New York, No. 10-cv-1838, 2012 WL 37544, at *4 (E.D.N.Y. Jan. 9, 2012) (quoting Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)). ALJ Wasko considered ACS's proof of plaintiff's alleged maltreatment; conversely, as discussed more fully below, this action deals with whether ACS employees reasonably believed

11

that V.G.'s health and safety were in imminent danger in plaintiff's custody.[5] Since the issues are not "identical," the doctrine of collateral estoppel is inapplicable and plaintiff's motion is denied.

### III. Defendants' Motion

Defendants move for summary judgment on all claims, arguing that many of plaintiff's claims are legally barred, while the remainder are not supported by evidence in the record. Defs.' Mem. at 1-2.

#### A. Fourth Amendment, Equal Protection, and State Law Claims

Plaintiff lacks standing to bring Fourth Amendment claims for V.G.'s removal because she stipulated to withdraw all claims on behalf of V.G. See Graham, 869 F. Supp. 2d at 355 (citing cases). Similarly, plaintiff cannot bring a claim for malicious prosecution because her Fourth Amendment rights were not violated. See id. at 356. Therefore, summary judgment is granted for defendants on plaintiff's Fourth Amendment claims.

There is no evidence in the record to support a claim for discrimination under 42 U.S.C. § 1981 or the Equal Protection Clause of the Fourteenth Amendment, and plaintiff does not raise any arguments against their dismissal. See Pl.'s Opp'n; Reyes, 2012 WL 37544, at *2. Accordingly, summary judgment is granted for defendants on these claims.

Finally, "[d]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." Hershey v. Goldstein, --- F. Supp. 2d ----, 2013 WL

---

[5] Plaintiff appears to recognize this. See Pl.'s Opp'n at 10-11, 14-17 (arguing that "any reasonable case worker would have concluded that the removal was objectively unreasonable").

12

1431422, at *22 (S.D.N.Y. Apr. 9, 2013) (quoting Campbell v. City of New York, No. 09-CV-3306, 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)). Therefore, summary judgment is granted for defendants on plaintiff's state law claims, and the Court considers only plaintiff's remaining due process claims.

### B. Municipal Defendants

Plaintiff brings claims against the City and ACS. "ACS is an agency of the City of New York and cannot be sued independently." Graham, 869 F. Supp. 2d at 348. Rather, claims against ACS must "be brought in the name of the city of New York." Id. (quoting N.Y.C. Charter ch. 17, § 396). Accordingly, summary judgment is granted for ACS.

"In order to establish municipal liability for unconstitutional acts by municipal employees, a plaintiff must show that the violation of her constitutional rights results from a municipal policy, custom, or practice." Bazile, 2013 WL 3495936, at *3 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). "The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact.'" Id. (quotation omitted). "In addition, plaintiff 'must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" Id. (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

There is no evidence in the record indicating that any City or ACS policy, custom, or practice resulted in harm to plaintiff. To the extent plaintiff argues that ACS has a policy of removing children without prior court review, Pl.'s Opp'n at 17-18, she "fail[s] to produce proof of any sort to support [her] conclusory allegations." Porter v. City of New York, No. 1:03-cv-6463, 2007 WL 1791149, at *7 (E.D.N.Y. June 19, 2007).

13

Similarly, plaintiff's reliance on Tenenbaum is misplaced. In Tenenbaum, the child was removed for a medical examination prior to obtaining a court order, which the City conceded was "accomplished pursuant to City policy." 193 F.3d at 591, 597. Here, there is no such concession, so plaintiff is required to show "that the removal was effected pursuant to a City policy or custom." Id. at 597. Finally, there can be no genuine dispute that plaintiff's intimations that Shabazz lacked sufficient training to identify mental illness do not rise to the level of "deliberate indifference" and did not cause ACS to determine that V.G.'s health and safety were in danger. Pl.'s Ex. A at 13; see Monell, 436 U.S. at 694 (requiring official policy or custom to be "the moving force [behind] the constitutional violation"). Therefore, summary judgment is granted for the City.

### C. Individual Defendants

Plaintiff brings claims against current and former ACS employees Shabazz, Nieves, Harris, and Taub.

#### i. Shabazz and Nieves

Plaintiff's claims against Shabazz and Nieves are time-barred. "The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years. For actions brought pursuant to § 1986, the limitations period is one year." Paige v. Police Dep't of Schenectady, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (citations omitted). The statute of limitations runs from "the time that plaintiff knows, or has reason to know, of the injury that is the basis of her action." Brevot v. N.Y.C. Dep't of Educ., No. 04 Civ. 7959, 2007 WL 690130, at *5 (S.D.N.Y. Mar. 6, 2007) (citing Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 332 (2d Cir. 1997)). Plaintiff learned that V.G. was removed on March 11, 2008, and the family court approved the removal the next day. "[O]nce such court confirmation of the basis for removal is obtained, any liability for the continuation

14

of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child." Southerland v. City of New York, 680 F.3d 127, 153 (2d Cir. 2012) (quotation omitted). Therefore, plaintiff's claims accrued on March 11, 2008.[6] Plaintiff filed this action on February 23, 2012, which is more than three years after March 11, 2008. Accordingly, summary judgment is granted for Shabazz and Nieves.[7]

### ii. Harris and Taub

Plaintiff's claims against Harris and Taub are meritless. There is no genuine dispute that Harris and Taub had no personal involvement in removing V.G. See Celestin v. City of New York, 581 F. Supp. 2d 420, 428-29 (E.D.N.Y. 2008). Indeed, Harris assisted with withdrawing ACS's neglect petition against plaintiff, Rauchberg

---

[6] Plaintiff's invocation of the "continuing violation doctrine" to extend the date of accrual to March 10, 2010, the date the neglect petition was terminated, Pl.'s Opp'n at 3-4, is inapposite because the doctrine requires a policy or practice which, as discussed above, is unsupported by the evidence in the record. See Cangemi v. United States, --- F. Supp. 2d ----, 2013 WL 1332842, at *8 (E.D.N.Y. Mar. 29, 2013). Moreover, Shabazz's involvement ended in June or July 2008 and Nieves was only involved on March 11, 2008. Pl.'s Ex. A at 6-7, Ex. C (Nieves Dep.) at 25-29.

[7] Even if plaintiff's claims against Shabazz and Nieves were timely, there can be no genuine dispute that Shabazz and Nieves had "reasonable cause to believe" that continuing V.G. in plaintiff's custody presented "an imminent danger to the child's life or health." N.Y. Fam. Ct. Act § 1024; see also Wilkinson, 182 F.3d at 105 (affirming grant of summary judgment for defendants because "courts must apply the 'reasonable basis' test to permit investigators considerable discretion" such that "even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation"). There was insufficient time to seek prior judicial authorization for removal because, among other things, V.G. told Shabazz that she was almost struck by a bus a few days earlier when plaintiff was "trying to get away from someone she believed was chasing her." Rauchberg Decl. ¶ 11, Ex. J at 20; see Gottlieb v. Cnty. of Orange, 84 F.3d 511, 520 (2d Cir. 1996). Moreover, plaintiff received a post-deprivation evidentiary hearing before the family court the very next day. Rauchberg Decl. ¶ 7, Ex. F.

Decl. ¶ 4, Ex. C at ACS 124, so there can be no genuine dispute that she did not harm plaintiff's interest in the care, custody, and management of V.G. Finally, there is no evidence in the record supporting plaintiff's conspiracy claims. Accordingly, summary judgment is granted for Harris and Taub.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion is hereby DENIED, and defendants' motion is hereby GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
August 13, 2013

/s/ ILG
I. Leo Glasser
Senior United States District Judge